UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

QSR AUTOMATIONS, INC.                                                                              PLAINTIFF

v.                                                                           CIVIL ACTION NO. 3:09CV-242-S

KRS CORPORATION LLC                                                                              DEFENDANT

**MEMORANDUM OPINION**

This matter is before the court on motion of the defendant, KRS Corporation LLC ("KRS"), to dismiss the action for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2)(DN 8). This matter is fully presented on the briefs. Therefore, the plaintiff, QSR Automations, Inc. ("QSR"), need only present a *prima facie* case for jurisdiction to avoid dismissal. *Niemi v. NIIK Spring Co.*, 276 F.Supp.2d 717 (E.D.Mich. 2003), *citing, Kerry Steel v. Paragon Industries*, 106 F.3d 147, 147 (6th Cir. 1997). The court must consider the facts in the light most favorable to QSR. *Dean v. Motel 6 Operating, LLP*, 134 F.3d 1269, 1272 (6th Cir. 1998). In the face of a properly supported motion for dismissal, QSR "may not stand on [its] pleadings, but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 2002).

QSR is a computer hardware and software developer for the restaurant and hospitality industries. QSR's products include "bump-bar" keypads which permit communication between various departments, such as between the front of a restaurant and the kitchen. KRS is a direct competitor of QSR.

The complaint alleges that the founder and principal of KRS, Kevin R. Stoops, gained access to QSR's confidential and proprietary information through his employment with Applebee's International, Inc. QSR contends that Stoops copied the features, form, and functions of QSR's

bump-bar keypads and began manufacturing a line of competing products. The complaint alleges that KRS has been selling its competing products since at least December 2, 2008. It is alleged that KRS offers its products on its website which describes them as "Q.S.R. Keypad repair kits and complete replacement keypads" for "Keypad models 2200, 3000 and 4000." Complaint, ¶ 10. That is, KRS is accused of offering its own products as "fixes" for or complete replacements for QSR's products.

KRS is a Kansas limited liability corporation with its principal place of business in Bucyrus, Kansas. Compl., ¶ 3. The complaint alleges that KRS sold its products to Kentucky purchasers through its interactive website and engaged in infringing and unlawful advertising in Kentucky.[1]

QSR filed suit in this court alleging (1) misappropriation of trade secrets and confidential information, (2) tortious interference with contract, (3) federal trademark infringement, (4) common law trademark infringement, (5) false advertising under the Lanham Act, (6) deceptive trade practices, and (7) unfair competition. KRS has moved to dismiss on the ground that this court lacks personal jurisdiction over it. KRS contends that it has not purposefully availed itself of the privilege of doing business in Kentucky, and that the actions complained of do not arise from any activity of KRS here.

KRS urges that it has never sold a product in Kentucky, no KRS employees or affiliates have ever traveled to Kentucky on KRS business, and KRS does not operate a website or advertise in any

---

[1] QSR has attached copies of two advertisements to the complaint, one of which appears to be from a 2009 "New Tech" supplement to Hospitality Technology, and the other of which appears to be from a March 2009 issue of Hospitality Technology. The court is unclear what sort of publications these are. The sole reference to these items in the complaint appears at ¶ 29 which states that "...the Defendant has at all relevant times infringed upon the Plaintiff's Federal Trademarks by using them or confusingly similar marks in advertising the Defendant's products referenced herein. Copies of relevant pages from the Defendant's website and the Defendant's advertising materials are attached hereto as **Exhibit B**..." In QSR's response brief, one sentence addresses trade publications: "Also, at about the same time, KRS began a national advertising campaign directly targeting QSR (ie. through advertisements in restaurant trade magazines and national restaurant trade electronic newsletters), examples of which were attached as Exhibit B to the verified Complaint." Response Brief (DN 10), p. 7. There is no further information or argument concerning advertisements other than the materials on the KRS website. The Leet Affidavit makes no reference to trade publications or electronic newsletters. As such, these items are of no value in the present analysis.

medium that is directed toward Kentucky residents. QSR asserts that KRS' website which permits on-line purchases of KRS products nationally is highly interactive and thus supports a finding of minimum contacts, as KRS solicited business in Kentucky. Further, QSR claims that KRS committed intentional tortious acts outside of Kentucky which were aimed at Kentucky and the effects of which were felt by QSR in Kentucky. QSR urges that the court can thus find minimum contacts under the "effects test."

QSR bears the burden of establishing personal jurisdiction over KRS. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). The court must apply Kentucky law and evaluate whether the exercise of jurisdiction over KRS under Kentucky's long-arm statute would comport with the requirements of due process. *First National Bank of Louisville v. J.W.Brewer Tire Co.*, 680 F.2d 1123 (6th Cir. 1982); *Info-Med. Inc.*, *v. National Healthcare, Inc.,* 669 F.Supp. 793, 795-96 (W.D.Ky. 1987).

As reiterated in *Static Control Components, Inc. v. Lexmark International, Inc.,* 2005 WL 2009273 (E.D.Ky. Aug. 19, 2005),

> The "sine qua non" of personal jurisdiction is the purposeful availment factor. *See Southern* [*Machinery Co. v. Mohasco Industries, Inc.,*] 401 F.2d [374 (6th Cir. 1968)] at 381-82. This factor requires that the defendant "purposefully avail[] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of the laws." *Burger King v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 529 (1985). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated [contacts], or of the unilateral activity of another party or third person." *Id.*; *see also Dean v. Motel 6 Operating Co.*, 134 F.3d 1269, 1273 (6th Cir. 1998).

*Static Control*, 2005 WL 2009273 at *2. In the *Static Control* case, the court evaluated whether defendant IPW's website "evince[d] an intention by IPW to purposefully avail itself of the privilege of conducting activities within Kentucky." In this regard, the court stated:

> Courts have developed three categories for jurisdictional analysis of websites: (1) passive websites which merely make information available to users; (2) websites there the owner clearly does business over the Internet; and (3) a middle category of moderately interactive websites where the user can exchange information with the

host computer. *Zippo Manufacturing Co. v. Zippo Dotcom, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa. 1997)(citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996)). If a court determines that a website is passive in nature, there is no jurisdiction. *Zippo*, 952 F.Supp. at 1124...

The Sixth Circuit has stated that the operation of "a website that is accessible to anyone over the Internet is insufficient to justify general jurisdiction," even where the website enables the defendant to do business with residents of the forum state because such activity does not "approximate[] physical presence within the state's border." *Bird v. Parsons*, 289 F.3d 865 (6th Cir. 2002). Instead, operation of a website may constitute the purposeful availment of the privilege of acting in a forum state "if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002)...

*Id.* at *3.

In *Neogen, supra.*, the 6th Circuit Court of Appeals stated that

> The maintenance of NGS's website, in and of itself, does not constitute the purposeful availment of the privilege of acting in Michigan. An Internet website by its very nature can be accessed internationally. By maintaining a website in Pennsylvania, NGS is no more benefitting from the laws of Michigan than from the laws of any other state. The level of contact with a state that occurs simply from the fact of a website's availability on the Internet is therefore an "attenuated" contact that falls short of purposeful availment...Several aspects of the website, however, support a finding of purposeful availment. When Michigan residents purchase NGS's services, for example, NGS provides them with passwords to access their test results on the website from Michigan. The granting of passwords to Michigan residents as part of a contract for NGS's services is an interactive usage showing that NGS has intentionally reached out to Michigan customers and enabled them to use NGS's services from Michigan.

282 F.3d at 890-91.

The website in issue here apparently has the capability of completing sales transactions for KRS products, although KRS urges that such transactions are rare. The pertinent point, however, is that no sales have ever been made to a Kentucky purchaser. Thus while the interactive capability exists, there have been no such Internet contacts with Kentucky. As noted by the court in *Neogen*,

the maintenance of the website in and of itself does not constitute purposeful availment. Rather the capability is the starting point for the analysis.[2]

The court in *Burger King, supra.,* noted that

> Although it has been argued that foreseeability of causing injury in another State should be sufficient to establish such contacts there when policy considerations so require [citations omitted], the Court has consistently held that this kind of foreseeability is not a "sufficient benchmark" for exercising personal jurisdiction. [citation omitted]. Instead, "the foreseeability that is critical to due process analysis...is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." [*World-Wide Volkswagen Corp. v. Woodson*, 100 S.Ct. 559, 567 (1980).]

In order to find minimum contacts with Kentucky, QSR urges that we apply the "effects doctrine" established in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) in this case. We find, however, that the *Calder* effects test has not been met.

In order to find personal jurisdiction over an absent defendant for an intentional tort, *Calder* requires that the out-of-forum defendant purposely direct intentional tortious conduct toward the forum states with the intent to cause harm within the forum state. In the *Calder* case, two Florida newsmen allegedly defamed actress Shirley Jones, in a Florida-based tabloid, the National Inquirer. Personal jurisdiction was found over the defendants in California, despite their lack of activity there. Shirley Jones, a resident of California, was their target, and thus they intended to harm her there. Her career was based in California, and thus all injury to her professionally would occur in California. Also, it was shown that the National Inquirer's circulation was greatest in California.

In this case, QSR conflates two of the *Calder* elements. It urges that because QSR could be expected to feel the effects of the theft of its trade secrets and KRS' misuse of the technology in

---

[2] QSR urges strongly that no contacts need be shown in order to find purposeful availment. It cites a number of district court cases which are not binding authority for this court. Rather, QSR seems to be urging that we find general jurisdiction by virtue of the "fact of the website's availability on the Internet." When not particularized with reference to contacts with Kentucky, the argument is necessarily a general jurisdiction argument. As noted in *Neogen*, the argument for general jurisdiction has been rejected by the Sixth Circuit.

Kentucky where it is headquartered, the court should find that KRS intended to cause QSR injury here. However, the elements are separate and distinct precisely because due process requires more than just fortuitous injury resulting from an intentional act committed out-of-state. The conduct must be aimed at the forum state. *See, Ford Motor Company v. Great Domains, Inc.*, 141 F.Supp2d 763, 774 (E.D.Mich. 2001)(a plaintiff always feels the effect of a legal injury in its home forum).

QSR attempts to cobble together the presence of a interactive website on the Internet with the effects it claims to have felt in Kentucky from KRS' intentional tortious acts. The problem is that there have been no "minimum contacts" with Kentucky so that the exercise of jurisdiction over KRS would not offend "traditional notions of fair play and substantial justice." *International Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

For the reasons set forth herein, the motion of KRS to dismiss the action for lack of personal jurisdiction will be granted by separate order.

**IT IS SO ORDERED.**